## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### BECKLEY DIVISION

**DAVID TURNER,**

      **Petitioner,**

**v.**                                        **Case No. 5:21-cv-00633**


**D.L. YOUNG, Warden**

      **Respondent.**


### PROPOSED FINDINGS AND RECOMMENDATIONS

On November 20, 2021, Petitioner David Turner ("Petitioner"), proceeding *pro se*, filed a Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. (ECF No. 1). This matter is assigned to the Honorable Frank W. Volk, United States District Judge, and by Standing Order has been referred to the undersigned United States Magistrate Judge for the submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). Currently pending is Respondent's request for dismissal as articulated in his Responses to the Court's Orders. (ECF Nos. 5, 8).

Having thoroughly reviewed the record, the undersigned **FINDS** that Petitioner did not exhaust his administrative remedies and does not state a claim for relief under § 2241. Accordingly, the undersigned respectfully **RECOMMENDS** that the presiding District Judge **GRANT** the request for dismissal; **DISMISS** the Petition for a Writ of Habeas Corpus; and remove this matter from the docket of the Court.

## I.    Relevant Facts

Petitioner is a federal prisoner incarcerated in Federal Correctional Institution

Beckley ("FCI Beckley") in Beaver, West Virginia with a projected release date of February 17, 2023. *See* Inmate Locator, Federal Bureau of Prisons, Inmate No. 29438-034. According to Petitioner, in May 2019, he was charged in a federal superseding indictment with one count of conspiracy to distribute and possession with intent to distribute 500 grams or more of hydrochoemloride. (ECF No. 1 at 4). After pleading guilty, he was purportedly sentenced to 60 months of imprisonment followed by four years of supervised release. (*Id.*).

On November 20, 2021, Petitioner filed in this Court a handwritten *pro se* petition for habeas relief under § 2241. (ECF No. 1). Petitioner alleges that the Federal Bureau of Prisons ("BOP") "owes" him 280 days of time credits under the First Step Act of 2018 ("FSA")[1] because he worked in certain prison jobs in 2021 and participated in numerous recidivism-reduction programs in 2020 and 2021. (*Id.* at 2-3). Petitioner further claims that the BOP "owes" him a "6-month incentive that [he] already will earn in the absence of the enactment of the [FSA]." (*Id.* at 3). In total, Petitioner asserts that, as of November

---

[1] The FSA, enacted on December 21, 2018, allows eligible federal prisoners who have not committed offenses enumerated in 18 U.S.C. § 3632(d)(4)(D) to earn 10 to 15 days of time credits for every 30 days of successful participation in Evidence Based Recidivism Reduction Programs and Productive Activities. 18 U.S.C. § 3632(d)(4)(A)(i). Prisoners who are determined "to be at a minimum or low risk for recidivating," may "earn an additional 5 days of time credits for every 30 days of successful participation in evidence-based recidivism reduction programming or productive activities," if they have not increased their risk of recidivism over two consecutive assessments. 18 U.S.C. § 3632(d)(4)(A)(ii). The BOP utilizes the Prisoner Assessment Tool Targeting Estimated Risk and Needs (PATTERN) to evaluate "the recidivism risk of each prisoner as part of the intake process, and classify each prisoner as having minimum, low, medium, or high risk for recidivism," as well as to "reassess the recidivism risk of each prisoner periodically, based on factors including indicators of progress, and of regression, that are dynamic and that can reasonably be expected to change while in prison." *United States v. Tinsley*, No. CR ELH-13-476, 2021 WL 5084691, at *16 n. 8 (D. Md. Nov. 2, 2021) (citing 18 U.S.C. §§ 3632(a)(1), (4)). A prisoner's FSA time credits can be applied to the prisoner's sentence to result in earlier release to pre-release custody, such as a residential reentry center ("halfway house") or home confinement, or up to 12 months of credit can be applied to a prisoner's term of supervised release. 18 U.S.C. §§ 3624(g), 3632(d)(4)(C). The credits can be earned retroactively beginning on the date that the FSA was signed into law. 18 U.S.C. § 3632(d)(4)(A). However, the FSA established a two-year "phase-in" period, and the BOP interpreted that it had until January 15, 2022 to apply the applicable time credits to prisoners' sentences. 18 U.S.C. § 3621(h)(2).

14, 2021, he is entitled to "15 months and 10 days to be applied to pre-release custody (halfway house or home confinement) or supervised release (projected release date)." (*Id.*). The relief which Petitioner seeks in his petition is for the Court to "apply the law as written and within its competence." (*Id.* at 5).

On December 7, 2021, the undersigned entered an Order directing Respondent to show cause why the relief requested by Petitioner should not be granted. (ECF No. 4). Respondent filed a response to the Show Cause Order on December 14, 2021 in which he moved to dismiss the petition. (ECF No. 5). Respondent argued that Petitioner did not exhaust his administrative remedies regarding his claim, and the BOP was not required to fully implement the time credit provisions of the FSA until January 15, 2022. (*Id.*). Respondent attached as an exhibit to his response an affidavit dated December 13, 2021 from Destiny Spearen, a paralegal for the Beckley Consolidated Legal Center at FCI Beckley. (ECF No. 5-1 at 2). Ms. Spearen stated that she reviewed Petitioner's administrative history on SENTRY, the BOP's computer database, and Petitioner failed to fully exhaust his administrative remedies relating to this action.[2] (*Id.*). She attached to her affidavit Petitioner's "Inmate History," which listed the BOP's initial assessment and periodic reassessments of Petitioner's risk of recidivism and eligibility for time credits under the FSA. (*Id.* at 111-12). As shown in the documents, the BOP determined that Petitioner was eligible to earn FSA time credits, but he remained a high recidivism risk in December 2019, July and December 2020, and April and November 2021. (*Id.*).

On December 15, 2021, the undersigned entered an Order advising Petitioner of his right to file a reply to Respondent's response and motion to dismiss. (ECF No. 6). The

---

[2] Ms. Spearen did not attach Petitioner's administrative remedy printout to her initial declaration, but she attached it to her supplemental affidavit and further elaborated on the exhaustion issue.

undersigned allotted Petitioner 60 days to file a reply, but he did not respond. (*Id*.).  On January 31, 2022, the undersigned entered another Order, noting that the deadline for the BOP to fully implement the FSA expired, and the Court ordered Respondent to file a supplemental answer or response to the petition showing cause why the relief sought by Petitioner should not be granted. (ECF No. 7). The undersigned specified that Petitioner had seven days after service of the response to file a reply. (*Id*.).

Respondent filed a supplemental response to the petition on February 10, 2022 in which he moved to dismiss the petition as moot because the BOP implemented the FSA and Petitioner was deemed eligible and earning FSA time credits. (ECF No. 8). Respondent included as an exhibit to his supplemental response a supplemental declaration from Ms. Spearen dated February 3, 2022. (ECF No. 8-1 at 2). According to Ms. Spearen, Petitioner filed administrative remedies challenging the BOP's failure to timely implement the FSA program, but he did not exhaust his administrative remedies because he did not appeal the denial from the regional office to the central office. (*Id*.). Ms. Spearen further stated that Petitioner did not file any administrative remedies challenging how the BOP calculated his FSA time credits. (*Id*.). Finally, Ms. Spearen confirmed that Petitioner was earning time credits, applied retroactively beginning on December 21, 2018, the date that the FSA was enacted. (*Id*.). Ms. Spearen attached Petitioner's administrative remedy generalized retrieval printout. (*Id*. at 4-7). It showed that Petitioner filed an administrative remedy asking for FSA credits to be applied to his sentence at the field level on August 25, 2021, and he appealed it to the regional level on September 3, 2021. (*Id*. at 7). However, he did not appeal the regional denial to the central office. (*Id*.). Petitioner did not file a reply to Respondent's supplemental response and motion to dismiss.

On February 24, 2022, Respondent submitted a second supplemental declaration from Ms. Spearen dated the same day. (ECF No. 9). Ms. Spearen confirmed that the BOP performed a manual calculation of Petitioner's credits, and he earned 250 days of federal time credits as of the date of her declaration. (*Id.* at 2). However, Ms. Spearen explained that the BOP could not apply the credits to Petitioner's release date at that time because his risk of recidivism was high. (*Id.*). Accordingly, Ms. Spearen stated that the time credits were not reflected in Petitioner's sentence computation, a copy of which she attached to her affidavit. (*Id.*). The computation data indicates that Petitioner is eligible for home detention on August 17, 2022, and he is projected to be released on February 17, 2023. (*Id.* at 3).

## II.  **Standard of Review**

Although Respondent did not state under which rule he brought the request for dismissal, given the stage of the proceedings and nature of the arguments presented, it is best understood as a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1), which challenges a court's subject matter jurisdiction over the pending dispute. *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). A Rule 12(b)(1) motion can be presented in two ways. First, the movant may contend that "a complaint simply fails to allege facts upon which subject matter jurisdiction can be based." *Adams*, 697 F.2d at 1219. When presented with this contention, the court assumes that the allegations in the complaint are true and affords the plaintiff the same procedural protection he would receive under Rule 12(b)(6). *Id.* Second, the movant may raise a factual attack against the complaint, alleging that the jurisdictional allegations of the complaint are not true. *Id.* Then, a court "is to regard the pleadings' allegations as mere evidence on the issue and may consider evidence outside the pleadings without converting the proceeding to one for summary

judgment." *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991) (citing *Adams*, 697 F.2d at 1219). The burden of proving that a court has subject matter jurisdiction rests with the petitioner, as he is the party asserting it. *Johnson v. N. Carolina*, 905 F. Supp. 2d 712, 719 (W.D.N.C. 2012). However, the court should grant dismissal "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Id.*

A motion to dismiss under Rule 12(b)(1) is the appropriate avenue by which to raise the issue of mootness, because mootness generally deprives a federal court of jurisdiction under Article III of the United States Constitution. *See Justice v. Acosta*, No. 2:17-CV-03681, 2018 WL 4291744, at *3 (S.D.W. Va. Sept. 7, 2018); *see also Estate of Peeples v. Barnwell Cty. Hosp.*, No. CIV.A. 1:13-01678, 2014 WL 607586, at *5 (D.S.C. Feb. 18, 2014) (collecting cases). Here, Respondent is bringing a factual challenge to this Court's jurisdiction over Petitioner's petition, alleging that subsequent developments have removed the factual basis for jurisdiction. As such, this Court may consider evidence outside the pleadings without converting the motion to one for summary judgment. *See L.K. ex rel. Henderson v. N. Carolina State Bd. of Educ.*, No. 5:08-CV-85-BR, 2011 WL 861181, at *4 (E.D.N.C. Feb. 18, 2011), *report and recommendation adopted*, No. 5:08-CV-00085-BR, 2011 WL 861154 (E.D.N.C. Mar. 9, 2011).

Respondent also seeks dismissal on the basis that Petitioner did not exhaust his administrative remedies, which is not a jurisdictional challenge. He filed a response concurrently with his request for dismissal. Therefore, the motion can be construed as a motion for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure, as opposed to a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *See Walker v. Kelly*, 589 F.3d 127, 139 (4th Cir. 2009). However, whether the

Court construes the motion as a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) or a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c), the distinction makes no practical difference as the same standard of review applies to either motion, and both motions may be filed in habeas actions. *Id.*; *see also Martin v. U.S. Parole Comm'n*, No. cv PWG-17-3335, 2018 WL 2135009, at *1 (D. Md. May 9, 2018).

When deciding a motion for judgment on the pleadings, the court must accept all well-pleaded allegations of the petition as true and "draw all reasonable factual inferences" in favor of the petitioner. *See Massey v. Ojaniit*, 759 F.3d 343, 353 (4th Cir. 2014); *Wolfe v. Johnson*, 565 F.3d 140, 169 (4th Cir. 2009). Nonetheless, the court is "not obliged to accept allegations that 'represent unwarranted inferences, unreasonable conclusions, or arguments,' or that 'contradict matters properly subject to judicial notice or by exhibit.'" *Massey*, 759 F.3d at 353 (quoting *Blankenship v. Manchin*, 471 F.3d 523, 529 (4th Cir. 2006)). A court presented with a motion for judgment on the pleadings in a federal habeas case must consider "the face of the petition and any attached exhibits." *Walker*, 589 F.3d at 139 (quoting *Wolfe*, 565 F.3d at 169) (internal markings omitted). In addition, the court may consider "matters of public record," including documents from prior or pending court proceedings, when resolving the motion without converting it into a motion for summary judgment. *Id.* The Court "may also consider documents attached to the complaint ... as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic." *Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (citing *Blankenship,* 471 F.3d at 526 n.1).

## III.    <u>Discussion</u>

Petitioner alleges that the BOP "owes" him 280 days of time credits under the FSA and a "6-month incentive" outside the scope of the FSA. (ECF No. 1 at 2-3). Overall, he

claims that, as of November 14, 2021, he is entitled to "15 months and 10 days to be applied to pre-release custody (halfway house or home confinement) or supervised release (projected release date)." (*Id.* at 3). Respondent moves to dismiss the petition on the basis that Petitioner's claim is moot, and he has not exhausted his administrative remedies. (ECF Nos. 5, 8).

### A. Mootness

Respondent asserts that Petitioner's claim is moot because the BOP fully implemented the FSA, and Petitioner is earning time credits applied retroactively beginning on December 21, 2018, the date that the FSA was signed into law. (ECF No. 8 at 2). According to Respondent, Petitioner earned 250 days of federal time credits, as of February 24, 2022, but they could not be applied to his release date at that time because his recidivism level was high. (ECF No. 9 at 2).

A court must have subject matter jurisdiction pursuant to Article III of the United States Constitution in order to address the merits of a habeas petition. Even when no party has raised the issue of subject matter jurisdiction, the Court must consider it. Article III allows federal courts to adjudicate "only actual, ongoing cases or controversies." *Lewis v. Continental Bank Corp.,* 494 U.S. 472, 477 (1990) (citations omitted). Consequently, "[t]o be justiciable under Article III of the Constitution, the conflict between the litigants must present a 'case or controversy' both at the time the lawsuit is filed and at the time it is decided. If intervening factual ... events effectively dispel the case or controversy during pendency of the suit, the federal courts are powerless to decide the questions presented." *Ross v. Reed*, 719 F.2d. 689, 693-94 (4th Cir. 1983); *Arizonans for Official English v. Arizona*, 520 U.S. 43, 68 n.22 (1997) (citations omitted) ("The requisite personal interest that must exist at the commencement of the litigation ... must continue throughout its

existence."). Put simply, "[a] claim may be mooted 'when the claimant receives the relief he or she sought to obtain through the claim,' because the court no longer 'has [ ] effective relief to offer.'" *Williams v. Ozmint*, 716 F.3d 801, 809 (4th Cir. 2013) (quoting *Friedman's, Inc. v. Dunlap*, 290 F.3d 191, 197 (4th Cir. 2002)).

In this case, to the extent that Petitioner claims that the BOP has not implemented the FSA or calculated his sentence, such claims are clearly moot. However, liberally construing his *pro se* petition, Petitioner is primarily seeking for FSA credits to be applied to his sentence. The BOP has not applied any FSA time credits to Petitioner's pre-release custody or supervised release because he is a high recidivism-risk. (ECF No. 9). Therefore, despite Respondent's arguments that the BOP fully implemented the FSA, and regardless of the propriety of the BOP's actions, it does not appear that Petitioner received the relief that he seeks in the petition, which is for FSA credits to be applied to his sentence. For that reason, the undersigned **FINDS** that the claim raised in the petition is not moot.

### B. Exhaustion

The undersigned next considers Respondent's contention that Petitioner failed to exhaust his administrative remedies concerning his claim for FSA time credits. Although § 2241 does not itself contain an exhaustion prerequisite, courts have judicially imposed a duty on prisoners to exhaust administrative remedies before bringing a claim under that statute. *See Braden v. 30th Judicial Circuit Court,* 410 U.S. 484, 490–91 (1973); *see also McClung v. Shearin,* No. 03–6952, 2004 WL 225093, at *1 (4th Cir. Feb.6, 2004) (citing *Carmona v. United States Bureau of Prisons,* 243 F.3d 629, 634 (2d Cir.2001)). The court may, in its discretion, waive exhaustion under certain circumstances, such as "when a petitioner demonstrates futility, the actions of the agency clearly and unambiguously violate statutory or constitutional rights, or the administrative procedure is clearly shown

to be inadequate to prevent irreparable harm." *Wright v. Warden,* Civil Action RDB–10–671, 2010 WL 1258181, * 1 (D. Md. Mar. 24, 2010). However, "in the absence of exceptional circumstances where the need for the remedy afforded by the writ of *habeas corpus* is apparent [...] courts require exhaustion of alternative remedies before a prisoner can seek federal habeas relief." *Timms v. Johns*, 627 F.3d 525, 530–31 (4th Cir. 2010) (citations and marking omitted). "While habeas corpus is "always available to safeguard the fundamental rights of persons wrongly incarcerated, it is the avenue of last resort." *Id.*

The BOP's Administrative Remedy Program, 28 C.F.R. § 542.10, *et seq.*, provides a process by which an inmate can seek review of an issue relating to any aspect of his or her confinement. With certain exceptions, an inmate must first present the issue of concern informally to a BOP staff member within the procedures prescribed by the warden of the institution in which the inmate is confined. *Id*. at § 542.13. An inmate can then file a formal written Administrative Remedy Request on the specified form. *Id*. at § 542.14. If the inmate is unsatisfied with the warden's response to the request, the inmate can appeal the decision to the appropriate regional director and can then appeal the response of the regional director to the general counsel. *Id*. at § 542.15. The administrative remedy request and appeals must comply with the requirements specified by the BOP. *Id*. at §§ 542.14, 542.15.

One important aspect of exhaustion is that it creates an administrative record for the Court to review. As the BOP is charged with computing an inmate's sentence and has "developed detailed procedures and guidelines for determining credit available to prisoners," *United States v. Wilson*, 503 U.S. 329, 334 (1992), the BOP should have the

first opportunity to review its calculation in this case and determine if any errors were made. As a district court recently explained:

> [T]he responsibility for determining sentence-credit awards lies with the Attorney General, through the BOP, as opposed to district courts. *United States v. Roberson*, 746 F. App'x 883, 885 (11th Cir. 2018) (citing *United States v. Wilson*, 503 U.S. 329, 330 (1992)). ... Because the BOP calculates a prisoner's credit towards his federal sentence, a dissatisfied inmate must pursue the administrative remedy available through the federal prison system before seeking judicial review of his sentence. *Id.* (internal quotations and citation omitted).

*United States v. Usma*, No. 2:19-CR-133-SPC-MRM, 2022 WL 267518, at *1 (M.D. Fla. Jan. 28, 2022) (internal markings omitted).

Petitioner filed administrative remedy request number 1092274, asking for the BOP to apply FSA credits to his sentence, at the field level on August 25, 2021, and he appealed it to the regional level on November 8, 2021. (ECF No. 8-1 at 7).[3] However, Petitioner did not appeal the regional director's denial of his administrative remedy request to the BOP's central office. (*Id.* at 2, 7). Petitioner has not disputed Respondent's contention that he did not exhaust his administrative remedies, nor has he demonstrated a valid reason to waive exhaustion. He cannot show that the process is futile because the BOP often reviews and recalculates inmate sentences. There is no evidence that the BOP clearly and unambiguously violated statutory or constitutional rights in calculating

---

[3] "All formal administrative remedy requests are logged into the national SENTRY database and given a unique identifying number. An extension is added to the number which denotes the level at which the claim is filed. Subsequent appeals of an issue will have the same identification number with a different extension identifying the level where filed. The extension '-F1' indicates the filing was at the institution or field level. The extension '-R1' indicates the filing was at the regional level. The extension '-A1' indicates the filing was at the national level. If an appeal is rejected and re-filed at the same level, perhaps correcting the identified deficiencies, then the number will change but the letter will remain the same; i.e., '-A2.'" *Torres v. Knight*, No. CV 4:21-0299-TMC-TER, 2021 WL 3518140, at *2 (D.S.C. July 21, 2021), *report and recommendation adopted,* 2021 WL 3513966 (D.S.C. Aug. 10, 2021) (citations omitted).

Petitioner's FSA credits and their impact on his sentence, and Petitioner has not shown that the administrative procedure is clearly inadequate to prevent irreparable harm. Accordingly, the undersigned **FINDS** that Petitioner did not exhaust his administrative remedies, and the exhaustion requirement should not be waived in this instance.

### C.  FSA Time Credits

Finally, even if the Court were to waive exhaustion, Petitioner fails to assert a basis for relief under § 2241. FSA time credits can only be applied to a prisoner's sentence if the prisoner meets certain criteria, including that he or she has "[s]hown through the periodic risk reassessments a demonstrated recidivism risk reduction or maintained a minimum or low recidivism risk, during the term of imprisonment." 18 U.S.C. § 3624(g). The BOP assessed Petitioner's PATTERN score in December 2019, July and December 2020, and April and November 2021. (ECF No. 5-1 at 111-12). Each time, he was at a high risk of recidivism. (*Id.*). Petitioner does not challenge the BOP's finding that he is at a high risk of recidivism. Therefore, by statute, the FSA time credits cannot be applied to his sentence at this time. *See, e.g., Knight v. Bell*, No. CV JKB-20-3108, 2021 WL 1753791, at *4 (D. Md. May 4, 2021) (finding that the petitioner was not eligible to use any time credits to reduce his sentence because his current PATTERN score showed a high-risk recidivism level and his claim thus failed, and the petition should be denied, and the action dismissed). In addition, Petitioner does not assert any facts or explanation that he is entitled to a "6-month incentive" in the absence of the FSA. He filed this action in November 2021 and has never elaborated on his conclusory claim regarding a six-month incentive. The undersigned afforded Petitioner multiple opportunities to reply to Respondent's contentions that this action should be dismissed, and he never responded. For all of the above reasons, the undersigned **FINDS** that Petitioner fails to assert a viable

claim under the FSA or any other law. Therefore, the undersigned respectfully **RECOMMENDS** that the presiding district judge **DENY** the petition and **DISMISS** this action with prejudice.

## IV.    Proposal and Recommendations

For the reasons stated, the undersigned respectfully **PROPOSES** that the presiding District Judge confirm and accept the foregoing findings and **RECOMMENDS** that Respondent's requests for dismissal, (ECF Nos. 5, 8), be **GRANTED**; the Petition for a Writ of Habeas Corpus, (ECF No. 1), be **DENIED**; and this matter be removed from the docket of the Court.

Petitioner is notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable Frank W. Volk, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, Petitioner shall have fourteen days (filing of objections) and three days (if received by mail) from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Thomas v. Arn*, 474 U.S. 140 (1985); *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing party,

Judge Volk and Magistrate Judge Eifert.

The Clerk is instructed to provide a copy of this "Proposed Findings and Recommendations" to Petitioner and counsel of record.

**FILED:** May 9, 2022

Cheryl A. Eifert
United States Magistrate Judge